1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   KENNETH G. HORSLEY

11              Petitioner,                No. 2:10-cv-1694 JAM JFM (HC)

12        vs.

13   J.W. HAVILAND,

14              Respondent.                FINDINGS AND RECOMMENDATIONS

15   _____/

16        Petitioner, a state prisoner, proceeds pro se with a petition for writ of habeas

17   corpus filed pursuant to 28 U.S.C. § 2254.  At issue are his 2008 convictions in the Sacramento

18   County Superior Court, case number 07F09616, for which he was sentenced to an aggregate

19   determinate term of 34 years plus an additional indeterminate term of 65 years to life.

20                              BACKGROUND

21        On the evening of October 6, 2007, petitioner fled in his vehicle from a California

22   Highway Patrol (CHP) officer who had initiated a traffic stop of petitioner's van by activating the

23   patrol car's lights and sirens.  Reporter's Transcript ("RT") at 119-122.  Alexandra Valdez, who

24   was petitioner's girlfriend, was a passenger in the van.  RT at 190-192, 202.

25        Petitioner led police on a chase through the streets of South Sacramento during

26   which he passed cars on the shoulder, ran red lights and stop signs, drove on the wrong side of

1

1  the road, and at one point, rammed his van in between two stopped cars to clear a path for his

2  van. RT at 119-176.  As CHP Officer Joseph Phipps' attempted a "pursuit intervention

3  technique" in his patrol car, petitioner fired three gunshots out the driver's side window.  RT at

4  137-139.  Eventually, a spike strip was deployed causing the van to slow and then stop; police

5  observed a white substance being thrown out the window.  RT at 150-51.  After a short foot

6  pursuit, petitioner was arrested.  RT at 302-307, 313-14.

7          A jury convicted petitioner on ten of eleven charged counts, including assault with

8  a deadly weapon upon a peace officer with two accompanying firearm enhancements,

9  discharging a firearm at an occupied motor vehicle, kidnapping, evading a peace officer,

10 possession of methamphetamine while armed with a loaded operable firearm, transportation of

11 methamphetamine, possession of a controlled substance, felon in possession of a firearm,

12 carrying a weapon capable of being concealed, and failure to stop at the scene of an accident.

13 The jury acquitted petitioner of attempted murder of a peace officer.

14         In a bifurcated proceeding, the jury found that petitioner had incurred three prior

15 "strike" convictions within the meaning of sections 667(b)-(I) and 1170.12(a)-(h) of the

16 California Penal Code and that he had served two prior prison terms within the meaning of

17 section 667.5(b).  The trial court sentenced him to state prison for an aggregate determinate term

18 of 34 years, plus an indeterminate term of 65 years to life.

19         Petitioner appealed to the California Court of Appeal, Third Appellate District.

20 The state appellate court reversed the conviction for possession of methamphetamine and

21 modified the judgment to award him one additional day of actual presentence custody credit and

22 one additional day of conduct credit.  Lodged Documents ("LD") 1, 4.  A petition for review to

23 the California Supreme Court was denied.  LD 5, 6.  Petitioner sought habeas corpus relief in the

24 California state courts where relief was likewise denied at all levels.  LD 7-12.  The parties agree

25 that petitioner has exhausted state court remedies as to the grounds presented.

26 /////

GROUNDS PRESENTED

Petitioner presents the following grounds for relief:

Ground One:    The various fire-arm convictions stem from the same set of operative facts and the multiple punishments imposed violate the Double Jeopardy Clause;

Ground Two:    Insufficient trial evidence supported the kidnapping charge, which accordingly should have been reduced to a lesser included offense of false imprisonment;

Ground Three: The trial court erred in using his 1985 and 1987 previous burglary convictions as "strikes" in violation of his plea agreements;

Ground Four:   Trial counsel rendered ineffective assistance;

Ground Five:   The cumulative effect of errors at trial deprived him of his right to due process and a fair trial;

Ground Six:    Appellate counsel rendered ineffective assistance; and

Ground Seven: The trial court improperly admitted a police officer's lay opinion testimony.

STANDARDS FOR FEDERAL HABEAS CORPUS

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. *Early v. Packer*, 537 U.S. 3, 7 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

/////

3

1     Under the "unreasonable application" clause of section 2254(d)(1), a federal

2  habeas court may grant the writ if the state court identifies the correct governing legal principle

3  from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

4  prisoner's case.  *Williams*, 529 U.S. at 413.  A federal habeas court "may not issue the writ

5  simply because that court concludes in its independent judgment that the relevant state-court

6  decision applied clearly established federal law erroneously or incorrectly.  Rather, that

7  application must also be unreasonable."  *Id*. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75

8  (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

9  question, is left with a 'firm conviction' that the state court was 'erroneous.'")

10     The court looks to the last reasoned state court decision as the basis for the state

11  court judgment.  *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002).  Under AEDPA, a state

12  court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption

13  by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Ybarra v. McDaniel*, 656 F.3d 984,

14  989 (9th Cir. 2011).  Where the state court reaches a decision on the merits but provides no

15  reasoning to support its conclusion, a federal habeas court independently reviews the record to

16  determine whether habeas corpus relief is available under section 2254(d).  *Delgado v. Lewis*,

17  223 F.3d 976, 982 (9th Cir. 2000).

18                                          ANALYSIS

19         A.     Procedural Bar

20     Respondent contends that petitioner's grounds one, two, three and five are

21  procedurally barred.  Petitioner presented these grounds to the California state courts on habeas

22  corpus, where the superior court held that they were procedurally barred, citing the rule of *In re*

23  *Dixon*, 41 Cal.2d 756, 759 (1953).  LD 8 at 1.  California's *Dixon* rule "generally prohibits

24  raising an issue in a post-appeal habeas corpus petition when that issue was not, but could have

25  been raised on appeal."  *Fields v. Calderon*, 125 F.3d 757, 762 (9th Cir. 1997); *In re Dixon*, 41

26  Cal.2d at 759.  The state appellate court and state supreme court denied the same claims without

4

comment, and it is presumed to have done so for the same reasons as the superior court.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground").

As a general rule, a federal habeas court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."  *Calderon v. United States District Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)); *see also Walker v. Martin*, 131 S.Ct. 1120, 1127 (2011).  An exception to the general bar exists if the petitioner demonstrates either (1) cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) that failure to consider the claims will result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 749-50.

For a state procedural rule to be independent, the state law basis for the decision must not be interwoven with federal law.  *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000), cert. denied, 531 U.S. 918 (2000) (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983).  To be adequate, it must be firmly established and regularly followed at the time of default.  *Coleman*, 501 U.S. at 750 (quoting *Ford v. Georgia*, 498 U.S. 411, 424 (1991); *Valerio v. Crawford*, 306 F.3d 742, 776 (9th Cir. 2002) ("In order to constitute adequate and independent grounds sufficient to support a finding of procedural default, a state rule must be clear, consistently applied, and well-established *at the time of petitioner's purported default*.").

California's *Dixon* rule became independent of federal law in 1998, when the California Supreme Court explicitly held that it would no longer consider whether an error alleged in a state habeas corpus petition constituted a federal constitutional violation when deciding whether claims are procedurally defaulted.  *In re Robbins*, 18 Cal.4th 770, 811-12 (1998); *see also Park v. California*, 202 F.3d 1146, 1152-53 & n.4 (9th Cir. 2002); *Protsman v.*

1   *Pliler*, 318 F.Supp.2d 1004, 1006-08 (S.D. Cal. 2004).  The Ninth Circuit uses a burden-shifting

2   analysis to determine adequacy.  *Bennett v. Mueller*, 322 F.3d 573, 585-586 (9th Cir. 2003).

3   Under this analysis, when the state pleads, as an affirmative defense, that a claim is procedurally

4   barred, the burden shifts to the petitioner to challenge the adequacy of that bar by showing that it

5   has been inconsistently applied.  *Id*.  Where the petitioner challenges the adequacy of the bar, the

6   state retains the ultimate burden of proving adequacy.  *Id*.

7           In this case, petitioner, who is proceeding pro se, makes no response to the

8   procedural bar asserted by respondent and therefore fails to meet his burden of shifting the

9   burden back to respondent.  *See King v. Lamarque*, 464 F.3d 963, 967 (9th Cir. 2006) ("*Bennett*

10  requires the petitioner to 'place [the procedural default] defense in issue" to shift the burden back

11  to the government").  Nevertheless, the procedural default issue need not be reached by this court

12  because petitioner's claims are easily disposed of on the merits.  *See Lambrix v. Singletary*, 520

13  U.S. 518, 524-25 (1997) (Although the question of procedural default "should ordinarily be

14  considered first," a reviewing court need not do so "invariably," especially when it turns on

15  difficult questions of state law.).  For the reasons that follow, it is therefore recommended that

16  petitioner's claims be denied on the merits.

17           B.      Ground One: Double Jeopardy

18           Petitioner claims that because his firearm convictions are "multiplicitous" and all

19  based on the same set of underlying facts, he has been subjected to multiple punishments for the

20  same offense in violation of the Double Jeopardy Clause.

21           The Double Jeopardy Clause of the Fifth Amendment, applicable to the States

22  through the Fourteenth Amendment, precludes successive prosecutions or multiple punishments

23  for the same offense.  *Monge v. California*, 524 U.S. 721, 727-28 (1998); *Brown v. Ohio*, 432

24  U.S. 161, 164 (1977) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).  "The

25  applicable rule is that where the same act or transaction constitutes a violation of two distinct

26  statutory provisions, the test to be applied to determine whether there are two offenses or only

one, is whether each provision requires proof of a fact which the other does not...." *Brown*, 432

U.S. at 166 (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).  "If each requires

proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a

substantial overlap in the proof offered to establish the crimes."  *Brown*, 432 U.S. at 166 (quoting

*Iannelli v. United States*, 420 U.S. 770, 785 n.17 (1975)).

        In addition, double jeopardy protections do not apply to the imposition of sentence

enhancements because sentence enhancements do not "punish" a defendant within the meaning

of double jeopardy.  *United States v. Watts*, 519 U.S. 148, 154 (1997).  Rather, they increase the

given sentence because of the manner in which the crime was committed.  *Id.*  "[T]he defendant

is punished only for the fact that the present offense was carried out in a manner that warrants

increased punishment."  *Id.* at 155 (quoting *Witte v. United States*, 515 U.S. 389, 403 (1995)).

        Petitioner was convicted of the following firearm-related offenses or

enhancements: (1) assault with a deadly weapon (firearm), a violation of section 245 of the

California Penal Code; (2) sentence enhancement for the personal and intentional use of a

firearm, a violation of section 12022.53(c) of the California Penal Code; (3) discharge of a

firearm at a motor vehicle, a violation of section 246 of the California Penal Code; (4) possession

of methamphetamine while armed, a violation of section 11370.1 of the Health and Safety Code;

(5) possession of a firearm by a previously convicted person, a violation of section 12021 of the

California Penal Code; and (6) possession of a concealed weapon, a violation of section 12025 of

the California Penal Code.  LD 8 at 2-3.  Review of the record reveals that his conviction on each

of these offenses required proof of an element not included in the others.  *See* Clerk's Transcript

("CT") at 180, 182, 184, 187-88, 191; LD 8 at 3.[1]  Accordingly, petitioner's convictions and

---

[1] In particular, and as set forth by the state superior court:

    The elements of assault with a firearm are: (1) an unlawful attempt,
(2) coupled with present ability, (3) to commit a violent injury, (4)
upon the person of another, (5) with a firearm.  (Cal. Pen. Code §§
240, 245.)  The elements of Penal Code § 12022.53(c)'s

1    related sentences do not violate the Double Jeopardy Clause.

2              C.       Ground Two: Sufficiency of the Evidence of Kidnapping

3              Petitioner claims the trial evidence did not support the elements of kidnapping,

4    and that the trial court should have reduced the kidnapping charge to the lesser included offense

5    of false imprisonment.  Petitioner argues that the kidnapping victim, his girlfriend, "could have

6    left at any time" and that the elements of force or fear were not shown.  Dckt. 1 at 9-10.

7              The Due Process Clause of the Fourteenth Amendment protects an accused

8    against conviction except upon proof beyond a reasonable doubt of every fact necessary to

9    constitute the crime with which he is charged.  *In re Winship*, 397 U.S. 358, 364 (1970).  On

10   habeas corpus review, sufficient evidence supports a conviction so long as, "after viewing the

11   evidence in the light most favorable to the prosecution, any rational trier of fact could have found

12   the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S.

13   307, 319 (1979); s*ee also Prantil v. California*, 843 F.2d 314, 316 (9th Cir. 1988) (per curiam).

14             The *Jackson* standard is applied "with explicit reference to the substantive

15   elements of the criminal offense as defined by state law."  *Davis v. Woodford*, 384 F.3d 628, 639

16   (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 319.)  The dispositive question is "whether the

17   record evidence could reasonably support a finding of guilt beyond a reasonable doubt."  *Chein v.*

18   *Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 318).

19   /////

20   _____

21             enhancement are: (1) personal and (2) intentional (3) discharge of a
             firearm (4) in the commission of a specified felony. Possession of
22           methamphetamine while armed requires finding (1) unlawful (2)
             possession (3) of methamphetamine (4) while armed (5) with an
23           operable, loaded firearm.  (Cal. Health and Saf. Code § 11370.1.)
             Possession of a firearm by a person previously convicted requires
24           finding: (1) carrying (2) a concealed firearm (3) within a vehicle or
             on the person (4) where certain circumstances are present (such as
25           a prior conviction of certain offenses). (Cal. Pen. Code § 12025).

26   LD 8 at 3 n.1.

1    A court reviews the entire record when the sufficiency of the evidence is

2  challenged on habeas corpus.  *Adamson v. Ricketts*, 758 F.2d 441, 448 n.11 (9th Cir. 1985),

3  *vacated on other grounds*, 789 F.2d 722 (9th Cir. 1986) (en banc), *rev'd*, 483 U.S. 1 (1987).  It is

4  the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw

5  reasonable inferences from basic facts to ultimate facts."  *Jackson*, 443 U.S. at 319.  If the trier of

6  fact could draw conflicting inferences from the evidence, the court in its review will assign the

7  inference that favors conviction.  *McMillan v. Gomez*, 19 F.3d 465, 469 (9th Cir. 1994).  The

8  inquiry of focus is not whether the evidence excludes every hypothesis except guilt, but rather,

9  whether the jury could reasonably arrive at its verdict.  *United States v. Mares*, 940 F.2d 455, 458

10  (9th Cir. 1991).

11    To establish the crime of kidnapping under California law, the prosecution had to

12  prove the following elements, and the jury was so instructed:

13        1.    The defendant took, held, or detained another person by
              using force or by instilling reasonable fear;
14

15        2.    Using that force or fear, the defendant moved the other
              person or made the other person move a substantial
16              distance;

17        3.    The other person did not consent to the movement; AND

18        4.    The defendant did not actually and reasonably believe that
              the other person consented to the movement.
19

20  CALCRIM No. 1215; CT at 183.  The jury was further instructed regarding consent or the lack

21  thereof:

22        The defendant is not guilty of kidnapping if he reasonably and
        actually believed that the other person consented to the movement.
23        The People have the burden of proving beyond a reasonable doubt
        that the defendant did not reasonably and actually believe that the
24        other person consented to the movement.  If the People have not
        met this burden, you must find the defendant not guilty of this
25        crime.

26        The defendant is not guilty of kidnapping if the other person
        consented to go with the defendant.  The other person consented if

she (1) freely and voluntarily agreed to go with or be moved by the defendant, (2) was aware of the movement, and (3) had sufficient maturity and understanding to choose to go with the defendant. The People have the burden of proving beyond a reasonable doubt that the other person did not consent to go with the defendant.  If the People have not met this burden, you must find the defendant not guilty of this crime.

Consent may be withdrawn.  *If, at first, a person agreed to go with the defendant, that consent ended if the person changed her mind and no longer freely and voluntarily agreed to go with or be moved by the defendant*.  The defendant is guilty of kidnapping if after the other person withdrew consent, the defendant committed the crime as I have defined it.

CALCRIM No. 1215; CT at 183 (emphasis added).

In this case, the fact that Ms. Valdez voluntarily entered petitioner's van does not preclude a finding of guilt as to kidnapping where she was subsequently imprisoned in the moving van against her will.  Trial evidence established that Ms. Valdez wanted to get out of the car and indeed asked petitioner to stop and let her out, however, petitioner did not do so.

At trial, a DVD of an interview of Ms. Valdez by CHP Officer Beauregard was played and a transcript provided for the jury.  CT at 149, 301-05 (People's Exhibit 43-A).  Ms. Valdez said to Officer Beauregard about the incident:

VALDEZ:      ...I told him to stop.  But he wouldn't stop.

[CHP]: He just said, "I'm not stopping?"

VALDEZ:      No.

[CHP]: Did he say why?"

VALDEZ:      No, he didn't say... (unintelligible) wouldn't stop. (crying)

[CHP]: Did he say...

VALDEZ:      I told him to stop and let me out.  But he wouldn't let me out.

[CHP]: He wouldn't let you out?

VALDEZ:      No.

10

1   CT at 302.  And finally:

2       VALDEZ:        He just said, "I ain't stopping.  They have to pull me
                       over."  I can't remember what he said.  He said, "I
3                      ain't stoppin until I, I'm gonna keep on going until
                       they stop me."  He just won't stop and let me out.  I
4                      want to get out and he won't let me out.

5   CT at 302.

6           At trial, Ms. Valdez's testimony was somewhat equivocal, however she confirmed

7   that she asked petitioner to stop and let her out of the van more than once and further testified

8   that her statements to Officer Beauregard following the incident were truthful.  RT at 201-205.

9           Thus, contrary to petitioner's assertion, evidence at trial showed that Ms. Valdez

10  could not have left the car "at any time she desired."  Dckt. 1 at 9.  Petitioner's continued

11  operation of the vehicle and refusal to stop and let Ms. Valdez out despite her repeated requests

12  sufficiently demonstrates that "force" was used to move the victim a substantial distance.  The

13  record evidence reasonably supports a finding that the prosecution proved all elements of

14  kidnapping and that petitioner was guilty beyond a reasonable doubt of the offense.  *See Jackson*,

15  443 U.S. at 318.  Petitioner fails to demonstrate a constitutional violation as to the kidnapping

16  conviction.

17          D.      Ground Three: Prior Convictions as Strikes

18          On August 16, 1985 in Sacramento County Superior Court Case No. 72492,

19  petitioner pleaded guilty to first degree burglary, a violation of section 459 of the California

20  Penal Code.  CT at 350.  On July 6, 1987 in case number 79118 in the same court, he pleaded no

21  contest to another first degree burglary in violation of section 459 of the California Penal Code.

22  CT at 324.  These two prior convictions served as the basis for enhancements applied at his

23  sentencing pursuant to California's habitual criminals, or "three strikes" law.  *See* Cal. Penal

24  Code §§ 667(d), 1170.12(b)); CT at 290.

25          Petitioner claims here that the use of his prior convictions as strikes violated his

26  right to due process of law and fundamental fairness and also violated the terms of his two prior

11

plea agreements.  In support of this claim, petitioner contends that when he entered into the two plea agreements at issue, he was advised merely that he could receive an additional one to five years on future convictions, but that the term "strike" was not used and he was not advised that he could receive a recidivist life sentence for a future offense.  Dckt. 1 at 12.

A criminal recidivist statute such as California's three strikes law is constitutionally applied so long as it was on the books at the time the latter offense is committed. *See Parke v. Raley*, 506 U.S. 20, 27 (1992) ("[W]e have repeatedly upheld recidivism statutes 'against contentions that they violate constitutional strictures dealing with double jeopardy, ex post facto laws, cruel and unusual punishment, due process, equal protection, and privileges and immunities'" (quoting *Spencer v. Texas*, 385 U.S. 554, 560 (1967)); *Witte v. United States*, 515 U.S. 389, 399 (1995) (holding that recidivist statutes do not violate double jeopardy because the enhanced punishment imposed for the later offense is not viewed as either a new jeopardy or an additional penalty for the earlier crimes, but is instead a stiffened penalty for the latest crime, which is considered to be an aggravated offense because it is a repeat offense); *United States v. Kaluna*, 192 F.3d 1199, 1198-1200 (9th Cir. 1999) (en banc) (upholding the federal three strikes statute against constitutional challenges based on double jeopardy, separation of powers, ex post facto and cruel and unusual punishment).

California's 1994 three strikes law was on the books before petitioner committed his 2007 offenses, and he was therefore on notice that he faced a stiffened penalty, if convicted, by virtue of those prior convictions.  Application of the statute to enhance petitioner's sentence did not violate his right to due process of law or fundamental fairness.  *See Parke*, 506 U.S. at 27.

To the extent petitioner seeks to challenge the validity of his 1985 and 1987 convictions based on allegations that he was not advised of the applicable collateral consequences of the prior convictions or a violation of his plea agreements, such a challenge is not cognizable in this federal habeas corpus action.  *See Lackawanna County Dist. Attorney v. Coss*, 532 U.S. 394 (2001).  In *Lackawanna*, the United States Supreme Court held:

1
2
3
4
5

> [O]nce a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid.  If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.

6  *Lackawanna*, 532 U.S. 394, 403-04 (2001) (internal citation omitted).

7          The Supreme Court suggested three exceptions to the general rule of

8  *Lackawanna*: (1) where there was a failure, at the time of the prior conviction, to appoint counsel

9  in violation of the Sixth Amendment and *Gideon v. Wainwright*, 372 U.S. 335 (1963); (2) where

10  a state court had, without justification, refused to rule on a properly presented constitutional

11  claim as to the prior conviction; or (3) after expiration of the time for direct or collateral review

12  of the prior conviction, the defendant obtained compelling evidence that he was actually innocent

13  of the crime underlying the prior conviction.  *Id*. at 404.  None of these exceptions apply to

14  petitioner's prior convictions.  Accordingly, his 1985 and 1987 convictions are conclusively valid

15  for purposes of this habeas corpus proceeding.  A challenge to the validity of petitioner's prior

16  convictions used to enhance the sentence received for his present offenses is not cognizable.  For

17  all these reasons, no relief is available.

18          E.      Grounds Four and Six: Ineffective Assistance of Counsel

19          Petitioner claims in ground four that trial counsel rendered ineffective assistance

20  and in ground six that appellate counsel rendered ineffective assistance, both in relation to the

21  alleged trial errors discussed in subsection B, C, and D, *supra*, and in violation of the Sixth

22  Amendment.  Thus, petitioner alleges that trial counsel (1) "fail[ed] to properly address the

23  multiplicitous gun charges"; (2) "fail[ed] to investigate the language of the Petitioner's priors

24  which are now called "strikes"; and (3) "failed to argue or address the alleged kidnap charges

25  [and request a] "Lesser included" charge of "False imprisonment" (Dckt. 1 at 16-17), and that

26  appellate counsel failed to raise these three issues on appeal in addition to the claim that trial

1  counsel rendered was ineffective in regard to those matters.  (Dckt. 1 at 21-22).  Petitioner's

2  ineffective assistance claims were presented on state habeas corpus, where they were denied at

3  each level.  LD 6-11.

4           Habeas corpus petitions asserting ineffective assistance of counsel are governed

5  by the clearly established federal law of *Strickland v. Washington,* 466 U.S. 668, 686, (1984).

6  *See Baylor v. Estelle,* 94 F.3d 1321, 1323 (9th Cir. 1996).  Ineffective assistance of counsel exists

7  where "counsel's conduct so undermined the proper functioning of the adversarial process that

8  the trial cannot be relied on as having produced a just result."  *Strickland,* 466 U.S. at 686.  In

9  order to state a cognizable claim under *Strickland,* petitioner must show, first, that counsel

10  performed deficiently, and second, that prejudice resulted from counsel's deficient performance.

11  *Id.* at 688.

12           The *Strickland* standard applies with equal force to petitioner's claim of

13  ineffective assistance of appellate counsel.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

14  Appellate counsel need not raise every non-frivolous issue requested by a defendant (*Jones v.*

15  *Barnes*, 463 U.S. 745, 751-54 (1983)), as the "process of 'winnowing out weaker arguments on

16  appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is

17  the hallmark of effective appellate advocacy."  *Smith v. Murray*, 477 U.S. 527, 535 (1986).

18           "Surmounting *Strickland's* high bar is never an easy task."  *Harrington v. Richter*,

19  131 S.Ct. 770, 787 (2011) (citing *Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010)).

20  Establishing an unreasonable application of *Strickland* by a state court is all the more difficult:

21  "the question is not whether counsel's actions were reasonable[;] [t]he question is whether there

22  is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  *Richter*, 131

23  S. Ct. at 788 (internal quotations and citations omitted).

24           Here, petitioner cannot establish either prong of the *Strickland* test as to trial

25  counsel's performance or appellate counsel's performance.  For the same reasons discussed in

26  subsections B, C, and D, *supra*, it is clear that neither trial counsel nor appellate counsel

14

1  performed deficiently, and that no prejudice resulted.  Petitioner's grounds four and six are

2  without merit.

3              F.      Ground Five: Cumulative Error

4              Petitioner claims he was denied his right to a fair trial as a result of the cumulative

5  effect of the aforementioned alleged errors.  Dckt. 1 at 19-20.  In some cases, the combined effect

6  of multiple trial errors may give rise to a due process violation if the trial was rendered

7  fundamentally unfair, even where each error considered individually would not require reversal.

8  *Parle v. Runnels*, 505 F.3d 922, 927 (9th. Cir. 2007) (citing *Donnelly v. DeChristoforo*, 416 U.S.

9  637, 643 (1974) and *Chambers v. Mississippi*, 410 U.S. 284, 290 (1973)).  "The fundamental

10  question in determining whether the combined effect of trial errors violated a defendant's due

11  process rights is whether the errors rendered the criminal defense 'far less persuasive,'

12  *Chambers*, 410 U.S. at 294, and thereby had a 'substantial and injurious effect or influence' on

13  the jury's verdict."  *Parle*, 505 F.3d at 927 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637

14  (1993)).

15              "[C]umulative-error analysis should evaluate only the effect of matters determined

16  to be error, not the cumulative effect of non-errors."  *United States v. Rivera*, 900 F.2d 1462,

17  1471 (9th Cir. 1990).  Here, petitioner's claim is foreclosed because no errors are found to

18  substantiate a claim of cumulative error.

19              G.      Ground Seven: Lay Opinion

20              Petitioner claims the state trial court erred in allowing the assault victim, Officer

21  Phipps, to testify regarding his lay opinion that, based on the shape of the muzzle flashes he

22  observed and the sound of the gunshots he heard, petitioner's gun was pointed at him when it

23  was fired.  Petitioner asserts this lay opinion testimony was inadmissible because the subject

24  matter was beyond the common knowledge and experience of people of ordinary education and,

25  therefore that it only could have been properly offered by an expert witness.  Dckt. 1 at 23-24.

26  /////

1        A state court's evidentiary ruling, even if erroneous, is grounds for federal habeas

2 corpus relief only if it rendered the state proceedings so fundamentally unfair as to violate due

3 process. *See generally Williams v. Taylor,* 529 U.S. 362, 375 (2000); *see also Drayden v. White*,

4 232 F.3d 704, 710 (9th Cir. 2000).   A "petitioner bears a heavy burden in showing a due process

5 violation based on an evidentiary decision."  *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir.

6 2005).

7        The Ninth Circuit has further explained:

> Under AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by "clearly established Federal law," as laid out by the Supreme Court. 28 U.S.C. § 2254(d). In cases where the Supreme Court has not adequately addressed a claim, this court cannot use its own precedent to find a state court ruling unreasonable. *Musladin,* 549 U.S. at 77, 127 S.Ct. 649.
>
> The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, *see Williams,* 529 U.S. at 375, 120 S.Ct. 1495, it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ. Absent such "clearly established Federal law," we cannot conclude that the state court's ruling was an "unreasonable application." *Musladin,* 549 U.S. at 77, 127 S.Ct. 649.

19 *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009).  In *Holley*, despite finding that "the

20 trial court's admission of the pornographic materials resulted in a trial that was fundamentally

21 unfair and would warrant issuance of the writ under our precedent," the Ninth Circuit held it was

22 without power to issue the writ under the strict standards of AEDPA because of the lack of

23 specific Supreme Court precedent.

24        Here, petitioner fails to demonstrate that the right he asserts- to be free from lay

25 witness testimony on matters beyond the common knowledge and experience of ordinary people-

26 has been clearly established by the Supreme Court as required by AEDPA.  Accordingly, no

1  relief is available.  *See* 28 U.S.C. § 2254(d); *Carey v. Musladin*, 549 U.S. 70, 74-76 (2006);

2  *Holley*, 568 F.3d at 1101 & n.2 (9th Cir. 2009).

3          In any event, the admission of evidence of Officer Phipp's lay opinion testimony

4  did not render petitioner's trial fundamentally unfair in violation of due process.  The Supreme

5  Court has defined the category of infractions that violate 'fundamental fairness' very narrowly."

6  *Estelle v. McGuire*, 502 U.S. 62, 73 (1991).  Here, Officer Phipps' lay opinion testimony was

7  based on his observations as a percipient witness of the direction of the bullets based on the

8  shape of muzzle flashes and the sound of the gun shots.  Such evidence was highly relevant to the

9  disputed issue of whether petitioner was shooting at Officer Phipps.  Officer Phipps testified the

10  muzzle flashes he observed and the gunshots he heard were consistent with being directly fired

11  upon, based on his previous experience being under direct fire while serving in the Marine Corp

12  and based on his law enforcement experience, including time spent as a firearms trainer.  CT at

13  249.  Officer Phipps' testimony in this regard was subject to cross-examination (RT at 270-72)

14  and to rebuttal by the defense in the form of the defenses's only witness who testified at length as

15  to the basis for his opinion that Officer Phipps would not have been able to determine whether

16  petitioner's gun was pointed at him when fired (RT at 357-462).  Finally, the jury was properly

17  instructed that it was free to accept or reject Officer Phipps' lay opinion testimony.[2]  For all these

18

19          [2] In particular, the jury was instructed:

20          A witness, who was not testifying as an expert, gave his opinion
           during the trial.  You may but are not required to accept that

21          opinion as true or correct.  You may give the opinion whatever
           weight you think appropriate.  Consider the extent of the witness's

22          opportunity to perceive the matters on which his or her opinion is
           based, the reasons the witness gave for any opinion, and the facts

23          or information on which the witness relied in forming that opinion.
           You must decide whether information on which the witness relied

24          was true and accurate.  You may disregard all or any part of an
           opinion that you find unbelievable, unreasonable, or unsupported

25          by the evidence.

26  CT at 169.

reasons, petitioner fails to demonstrate a constitutional error for which relief is available.

CONCLUSION

For all the foregoing reasons, petitioner's application for writ of habeas corpus should be denied.  Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, 28 U.S.C. foll. § 2254.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  The court must either issue a certificate of appealability or must state the reasons why such a certificate should not issue.  Fed. R. App. P. 22(b).  For the reasons set forth herein, petitioner has not made a substantial showing of the denial of a constitutional right.

Accordingly, IT IS HEREBY RECOMMENDED that

1.  Petitioner's application for a writ of habeas corpus be denied; and

2.  The district court decline to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The

/////

/////

/////

/////

/////

/////

18

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 10, 2012.

UNITED STATES MAGISTRATE JUDGE

LS/hors1694.hc